The Firestone Tire Rubber Company, a corporation (hereinafter "Firestone") filed an action against Great Northern Land and Cattle Incorporated, a corporation, d/b/a Southeastern Machinery Equipment Company (hereinafter "Great Northern") in the Circuit Court of Jefferson County, Alabama seeking damages in the amount of $8,742.74, plus interest and costs, for an indebtedness due Firestone from Great Northern growing out of the purchase of two heavy-equipment tires and charges for installation services and materials supplies on October 26, 1973. Great Northern filed an answer denying the indebtedness and counterclaimed for $500,000.00 damages allegedly suffered as a result of Firestone's installation of the tires upon Great Northern's equipment. Great Northern based its counterclaim in both tort and contract, alleging negligent installation of the tires; wanton, willful or intentional damage in installing the tires; breach of an agreement by failing to perform installation services in a good and workmanlike manner; and negligent or wanton breach of an agreement to perform installation services in a good and workmanlike manner.
The case was tried by the court and a jury; the jury returned a verdict in favor of Firestone in the amount of $9,791.87. All relief sought by Great Northern was denied. Great Northern thereafter filed a motion for new trial, assigning as error the failure of the trial court to charge with respect to its counterclaim sounding in contract. That motion was overruled and Great Northern perfected this appeal.
A pretrial order stipulated that during the period of October 22 through October 26, 1973 Great Northern purchased from Firestone two dozer tractor tires and the services and materials necessary for the installation of these tires. Pursuant to the agreement Firestone, through its employees acting within the line and scope of their employment, did install the tires on a Hough D-500 dozer tractor and performed the necessary related services.
Two witnesses for Great Northern testified that the proper way to change a front tire on a machine like the one involved here is to jack-up the front end of the machine and place blocks beneath it to keep the front part of the machine raised. Both stated that it would also be proper to raise the front end of the machine by placing the blade on the ground and driving forward, lifting the front of the dozer by the blade. They testified, however, that the machine *Page 1325 
could be left in that position for only a short period of time and that to keep the machine propped up in that manner, in gear and with the engine turned on, would damage the torque converter and the transmission. Once the machine was lifted, blocks should be placed beneath it to take the weight off the blade. Each testified that he would not leave a tractor dozer resting on its blade to change a tire.
The Firestone employee who had been in charge of installing the tire in question testified that he had used the dozer blade to raise the machine. He further stated that he had been told by the manager of Great Northern that the machine should not be allowed to run for more than five minutes and that he and his crew had obeyed that instruction. No blocks were placed beneath the machine to support its weight.
At the close of the evidence, Firestone submitted written requests for instructions; Great Northern submitted none. The trial court charged the jury with respect to the duty of reasonable care owed Great Northern by Firestone in performing the installation but failed to charge as to breach of contract. Counsel for Great Northern duly objected before the jury retired to consider its verdict. The transcript is as follows:
 "MR. WHITE: Judge, I would like to except to that portion of the oral charge wherein the Court charged the Jury in substance, as to the nature of the counter claim and in particular in regard to the Court failing to charge the Jury, if I recall, the charge, that the Court failed to charge about the breach of contract, I don't [think] the Court charged on that and we except to that and that is all we have.
 "THE COURT: You say there is one I failed to say anything about and that is the breach of contract.
"MR. WHITE: I would like to except to that. . . ."
There was no evidence of a written contract or agreement between the parties. The only testimony concerning terms was that there was an oral agreement by Firestone to deliver and install the tires and by Great Northern to pay for the tires and services when the installation was completed. Great Northern claims, however, that the contract contained an implied provision that installation of the tires would be performed in a good and workmanlike manner and that this part of the contract was breached by Firestone's negligent installation of the tires.
Great Northern assigns as error the trial court's failure to charge the jury on its contract claim, noting that the counterclaim alleged breach of contract and the pretrial order stipulated that Firestone had installed the tires pursuant to an agreement between the parties. Great Northern contends that failure to charge the jury on this issue is reversible error.
Firestone counters by saying that Great Northern failed to comply with the requirements of Rule 51 ARCP, and therefore is precluded from raising the trial court's failure to charge the jury; that Great Northern was not prejudicially injured by the trial court's failure to so charge the jury; and that the appeal taken by Great Northern is frivolous and due to be dismissed.
We consider first Firestone's contention that Great Northern, by failing to comply with the requirements of Rule 51 ARCP, lost its right to appeal the trial court's error, if any, in charging the jury.
Rule 51 ARCP provides in part:
 "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file . . . written requests that the court instruct the jury on the law as set forth in the requests. . . . Every oral charge shall be taken down by the court reporter as it is delivered to the jury. The refusal of a requested, written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge or in charges given at the request of the parties. No party may assign as error the *Page 1326 giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection. Submission of additional explanatory instructions shall not be required unless requested by the court." (Emphasis supplied.)
Firestone says that Great Northern cannot claim error under Rule 51 because Great Northern did not file written requests for instructions either before the court instructed the jury or after objection was made. This contention is without merit, since the filing of written instructions at the close of evidence is discretionary and submission of additional explanatory instructions are not required unless requested by the court. Here there was no such request from the trial court.
Objection by Great Northern was duly made before the jury retired to consider its verdict, and counsel clearly stated the matter to which objection was made. The question is whether counsel stated adequate grounds for the objection as required by the rule. Committee comment to the rule states that as a condition to the right to assert error on appeal, the party must object and state the grounds therefor before the jury retires. This comment was specifically recognized in Whetstonev. Caudle, 54 Ala. App. 299, 307 So.2d 697 (1975). The comment further explains that the rule is intended to provide for broader grounds for objection to the oral charge than is provided under the federal rule. Although the grounds must be stated in other than general terms, the federal requirement of "distinctly" stating grounds has not been preserved. "The word `distinctly' has been deleted not for the purpose of opening the door for general objections, but rather, to avert undue requirements of specificity under an unnecessarily technical appellate construction of the word `distinctly'." Rule 51 ARCP, Committee Comment.
Firestone contends that Great Northern failed to comply with Rule 51 in that no reasons at all were given for the objection. Counsel made a general objection to the charge dealing with the nature of the counterclaim and specifically for failure to charge on breach of contract. His reason for the objection, unstated at the time, was that failure to so charge left one theory of Great Northern's case, as framed by the original counterclaim and the pretrial order, unpresented to the jury.
An examination of the underlying purpose of the rule puts Great Northern in a more favorable position. Rule 51 of the Federal Rules of Civil Procedure has been interpreted by the United States Court of Appeals for the Fifth Circuit as requiring that objection to the court's oral charge be "sufficiently specific to bring into focus the precise nature of the alleged error." Delancey v. Motichek Towing Service,Inc., 427 F.2d 897, 900 (5th Cir. 1970).
In Pierro v. Carnegie-Illinois Steel Corp., 186 F.2d 75 (3d Cir. 1950) the plaintiff failed to object to the trial court's oral charge in the proper manner. However, the Court of Appeals found it "sufficiently specific to direct the attention of the Court to the issue it sought to raise, and the exceptions were definite enough to point out the omission from the charge. No more was required." 186 F.2d at 78.
The Alabama Supreme Court in reviewing assignment of error for defect in an oral charge prior to adoption of Rule 51, stated:
 "The process of review contemplates that the trial court will be given opportunity to correct any errors that it may have committed. Alleged errors in the oral charge must be specifically pointed out by objections, or exceptions, to the oral charge."
Scroggins v. Alabama Gas Corp., 275 Ala. 650, 657, 158 So.2d 90
(1963). We think this philosophy applies to Rule 51 as well.
The objection in this case was clearly specific enough to inform the court of *Page 1327 
the error complained of and to afford the court an opportunity to respond. The transcript reflects that the court reiterated Great Northern's objection. To require a statement of reasons for the objection under these facts would be imposing that sort of rigid technical construction of the rule which the drafting committee intended to avoid.
We are now confronted with the issue of whether the trial court's failure to charge the jury on one of Great Northern's theories of relief was reversible error, particularly where that action was framed as an issue both in the counterclaim and in the pretrial order. Great Northern relies on the principle, well established by Alabama courts, that a party is entitled to have his or her theory of the case made by the pleadings and issues presented to the jury by proper instructions. Jones v.Blackman, 284 Ala. 684, 228 So.2d 1 (1969); State Farm MutualAutomobile Ins. Co. v. Dodd, 276 Ala. 410, 162 So.2d 621
(1964).
Great Northern's contract claim is that an express contract to install tires and perform necessary related services existed between the parties. This express contract, Great Northern contends, contained an implied provision that the installation and services would be performed in a good and workmanlike manner. The contract was breached by Firestone's alleged negligent installation of the front tire. We find Great Northern's count in contract to be without basis.
There is no question that contracts are to be performed in a "workmanlike manner." Justice Stone in the early case of MobileLife Insurance Co. v. Randall, 74 Ala. 170 (1883), stated at 177:
 ". . . [C]ontracts, however briefly expressed, are to be interpreted in the light of great legal principles, which enter into and permeate all human transactions. Hence, the duty of requisite skill, fidelity, diligence, and a proper regard for the rights of others, is implied in every obligation to serve another. The degree of these qualifications is graduated by the nature of the service undertaken; but they inhere in, and form a part of all dealings between man and man."
The problem that has served as a source of confusion is whether the failure to perform with the requisite skill, fidelity and diligence gives rise to a cause of action in contract or in tort or both.
Justice Stone made the distinction that if the cause of action arose from the breach of the promise, the action is in contract; but if the cause of action arose from breach of a common-law duty which grows out of the contractual relationship, then the action is in tort. Stone used an example from Wilkinson v. Moseley, 18 Ala. 288 (1850) to illustrate his principle:
 "If the declaration allege the hiring of a horse to ride to a certain place, and that the defendant rode him so immoderately that he died, this would be case; for the contract of hiring imposed upon him the duty to ride in reason, or not unreasonably fast. But, if the declaration allege the hiring, and that he promised to ride with reasonable speed, but, not regarding his promise, he rode the horse immoderately, whereby he died, the action may be considered assumpsit." Id.
Cases since have formulated the principle thus:
 "When the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a duty — but does not imply a contract — to exercise due care in doing the act; and, therefore, when negligence exists in doing that act an action in tort only is available because there is no express or implied contract which is breached."
(Emphasis added.)
Waters v. American Cas. Co. of Reading, Pa., 261 Ala. 252, 258,73 So.2d 524 (1953); Vines v. Crescent Transit Company,264 Ala. 114, 85 So.2d 436 (1955); Smith v. Houston County HospitalBoard, 287 Ala. 705, 255 So.2d 328 (1971); C C Products, Inc.v. Premier Industrial Corp., 290 Ala. 179, 275 So.2d 124
(1972).
The most recent case to follow this principle is Green v.Hospital Bldg. Authority of *Page 1328 City of Bessemer, 294 Ala. 467, 318 So.2d 701 (1975). The court there found that the law will not impose on a hospital an implied promise to use due care, adding:
 "We think the wiser course is to refrain from disturbing the well established line of cases which have refused to imply a promise where none actually exists." 294 Ala. at 470, 318 So.2d at 704.
The contract relied upon by Great Northern made no mention of the manner of performance. Thus, no express promise was breached by Firestone's alleged negligent action and the law will not imply such a promise. Great Northern's sole cause of action was for the breach, if any, of the duty implied in all contracts for services that the work be performed with the degree of skill or workmanship possessed by those of ordinary skill in the particular trade for which one is employed. C.P.Robbins Associates v. Stevens, 53 Ala. App. 432, 301 So.2d 196
(1974). The trial court acted correctly in not giving Great Northern's requested charge.
The final issue for decision is whether the appeal by Great Northern was frivolously taken. Firestone argues that Great Northern's sole purpose in taking this appeal is to avoid paying Firestone's judgment. To support this contention Firestone relies on court proceedings collateral to this suit.
Regardless of Great Northern's motives in taking this appeal, the appeal itself is not frivolous. The contract issue was framed initially in Great Northern's counterclaim and survived as an issue in the pretrial order. There was testimony at trial relating to an implied contract between the parties; consequently, Great Northern reasonably concluded that it had a genuine issue for presentation to this court for decision. Under these circumstances, the appeal is not frivolous.
For the reasons above stated, the trial court's judgment is affirmed.
MOTION DENIED; JUDGMENT AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.